# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

BRUCE ELLIOTT MILLER,                          :

     Petitioner,                          :

vs.                                                          :          CA 16-0548-WS-MU

STATE OF ALABAMA,                           :

     Respondent.

## REPORT AND RECOMMENDATION

Bruce Elliott Miller, an individual presently serving a five-year probationary term following his February 16, 2011 counseled guilty pleas to two counts of unlawful distribution of a controlled substance, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254.  (Doc. 4)[1]. This matter has been referred to the undersigned for the entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72, and General Local Rule 72(a)(2)(R). It is recommended that the instant petition be dismissed as time barred under the Anti-Terrorism and Effective Death Penalty Act's one-year limitations provision contained in 28 U.S.C. § 2244(d).

## FACTUAL BACKGROUND

On May 14, 2010, Miller was charged by indictment with two counts of unlawful distribution of a controlled substance. The first count of the indictment averred that on

---

[1]    Although Petitioner also challenges his second-degree theft of property conviction (*see id.*), he avers in his habeas petition that when his illegal sentence with respect to that charge was corrected on April 9, 2015 (actually, June 17, 2015) the State simply "corrected a[n] already **dead** theft sentence." (*id.* at 4 (emphasis supplied)).

December 29, 2009, within a three-mile radius of Forrest Hill Elementary School, Miller unlawfully sold/distributed codeine, and the second count charged that on January 5, 2010, again within a three-mile radius of Forrest Hill Elementary School, he unlawfully sold/distributed Dihydrocodeinone (that is, hydrocodone). (*See* Doc. 11, Exhibit 1, at 1 & 42). Some three months later, on August 20, 2010, Miller was charged by indictment with one count of theft of property in the second degree, specifically that Miller "did on or about **January 14, 2010,** knowingly obtain or exert unauthorized control over a substance controlled by Chapter 2 of Title 20 or any amendments thereto, to wit: **Codeine Syrup and 10-MG Lortabs (two bottles),** with the intent to deprive the owner of said property, in violation of § 13A-8-4[2] of the Code of Alabama[.]" (Doc. 11, Exhibit 4 (emphasis in original; footnote added)).

On February 16, 2011, Miller entered counseled guilty pleas to all three counts and was sentenced to concurrent terms of imprisonment of twenty years, split to serve five years, with the remainder of each concurrent sentence to be suspended upon the successful completion of a 5-year probationary term. (Doc. 15, Exhibit 5, at 3-8; *see also* Doc. 11, Exhibit 1, at 4 & 45 (orders by the trial judge memorializing the guilty plea proceedings, with respect to the distribution charges, and making clear that after Miller served 5 years, the remainder of each 20-year sentence was to be suspended upon his

---

[2]  "The theft of any substance controlled by Chapter 2 of Title 20 or any amendments thereto, regardless of value, constitutes theft of property in the second degree." Ala. Code § 13A-8-4(d). Second-degree theft of property is a Class C felony, Ala. Code § 13A-8-4(b), and an individual convicted of a Class C felony, who has no prior felony convictions, is subject to a range of punishment of not more than 10 years and not less than 1 year and 1 day, *see* Ala.Code § 13A-5-6(a)(3).

successful completion of 5 years of probation)).[3] During the change of plea hearing, Miller acknowledged that he understood that the range of punishment for the distribution charges was 2 to 20 years but that because the activity was around a school a mandatory 5 year sentence was applicable (*id.* at 3-4); he acknowledged the Constitutional rights he was waiving by pleading guilty (*id.* at 4 & 5) and confirmed that his attorney reviewed the waiver of rights forms with him and that he had signed the forms (*id.* at 4)[4]; stated that he had not been threatened or forced to plead guilty and no one promised him a reward to plead guilty (*id.* at 5); and specifically stated that he was pleading to the two counts of unlawful distribution and one count of second-degree theft of property because he was guilty of those offenses (*id.* at 5). Thereafter, the Assistant District Attorney made the following proffer regarding the State's evidence:

> [T]he State expects the evidence to show [in CC-2010-2319] that on January 5, 2010, a confidential informant [and] an undercover officer working for MCSENT purchased pills from the Defendant Bruce Miller. He was the pharmacist at Fred's Pharmacy at the time. The Defendant sold the confidential informant and undercover officer 500 10mg Lortabs and 500 2mg Xanax. The confidential informant and the undercover officer paid $400 for the pills. This occurred at University at Overlook Road within the confines of Mobile County within a three-mile radius of Forest Hill Elementary School.

---

[3]    At the same time, a possession change was nol-prossed. (*See* Doc. 15, Exhibit 5, at 3).

[4]    The waiver of rights portion of the form Miller executed on February 16, 2011 reads, in relevant measure, as follows: "BY ENTERING A PLEA OF GUILTY, YOU WILL ALSO WAIVE YOUR RIGHT TO APPEAL, UNLESS (1) YOU HAVE, BEFORE ENTERING THE PLEA OF GUILTY, EXPRESSLY RESERVED THE RIGHT TO APPEAL WITH RESPECT TO A PARTICULAR ISSUE OR ISSUES, IN WHICH EVENT APPELLATE REVIEW SHALL BE LIMITED TO A DETERMINATION OF THE ISSUE OR ISSUES RESERVED, OR (2) YOU HAVE TIMELY FILED A MOTION TO WITHDRAW THE PLEA OF GUILTY AFTER PRONOUNCEMENT OF SENTENCE ON THE GROUND THAT THE WITHDRAWAL IS NECESSARY TO CORRECT A MANIFEST INJUSTICE, AND THE COURT HAS DENIED YOUR MOTION TO WITHDRAW YOUR PLEA, OR THE MOTION HAS BEEN DEEMED DENIED BY OPERATON OF LAW." (Doc. 11, Exhibit 1, at 7,10 & 14).

The State expects the evidence to show in CC-2010-2320, that on December 29th, 2009, a confidential informant and undercover MCSENT officer received three bottles of Codeine from the Defendant Bruce Miller at University and Overlook Road. Toxicology report is back and the liquid material revealed the presence of Codeine and weighed 619 grams. This occurred within the three-mile radius of Forest Hill Elementary, all within the confines of Mobile County.

State expects the evidence to show in CC-2010-3391, that on January 14th, 2010, the Defendant Bruce Miller was working as a pharmacist at Fred's General Store in Citronelle. Once he left the business, he had in his possession three 16 ounce bottles of Codeine syrup, two bottles containing five hundred Lortabs each from the store[,] with no right to do so. This occurred at 19580 North 3rd Street in Citronelle within the confines of Mobile County. Because of this being controlled substances, it automatically made it a theft of property second and the Defendant was arrested and charged with theft of property in the second degree all within the confines of Mobile County.

(*Id.* at 6-7.) After Miller, through his attorney, acknowledged that the State could prove these facts (*id.* at 7), the trial court accepted Miller's change of plea, and sentenced him on all three counts to concurrent twenty (20) years sentences, split to serve five years, with the remainder of each concurrent sentence to be suspended upon the successful completion of a 5-year probationary term (*see id.* at 7-8; *compare id. with* Doc. 11, Exhibit 1, at 4 & 45).

Miller did not appeal his guilty plea convictions and sentences (*compare* Doc. 4, at 3 (check-marking that he did not appeal from the judgment of conviction)[5] *with* Doc. 11, Exhibit 3, at 9 ("Petitioner did not appeal [h]is convictions.")); therefore, his convictions and sentences became final forty-two days later, on March 30, 2011, when the time expired for him to file an appeal, *see* Ala.R.App.P. 4(b)(1) ("In a criminal case a

---

[5]    According to Miller, he did not appeal because he did not know or understand the legal process and his attorney never mentioned an appeal was available. (*Id.*)

notice of appeal by the defendant shall be filed with the clerk of the trial court within 42 days (6 weeks) after pronouncement of the sentence, provided that the notice of appeal may be oral, as provided in Rule 3(a)(2).").[6]

Miller filed a Rule 32 petition in the Circuit Court of Mobile County, Alabama on February 13, 2012, collaterally attacking his convictions and sentences. (Doc. 11, Exhibit 2, at 7 (February 13, 2012 is the date Miller identifies as the date his petition was being mailed)). On the form Rule 32 he completed on February 13, 2012, Miller simply check-marked that the Constitution of the United States or the State of Alabama requires a new trial, a new sentence proceeding, or other relief. (*Id.* at 4). However, on April 20, 2012, Miller filed a motion to amend his Rule 32 petition in which he raised the following claims: (1) his (theft of property) conviction was obtained by use of evidence

---

[6]    Miller penned a letter to Mobile County Circuit Judge James C. Woods on May 9, 2011, which was docketed on May 12, 2011 and contains an implicit admission of guilt, as follows:

> I would like to express my most deepest and sincere sorrow for my recent *mistake* in life. . . . I believe in taking responsibility for my actions and facing the consequences thereof. Your Honor, I have taken responsibility and perhaps deserve to be chastised. Nevertheless, if it pleases the Honorable Judge to also consider granting me a second chance opportunity to prove that I have learned from this experience and recall me back before the Honorable Judge.
>
>        Unfortunately, you did not hear from me or my attorney as to the type of person I am truly. I do believe you would have found me to be a very affable person. I am a graduate of Howard University with a Doctorate of Pharmacy, I have a background in chemistry from Savannah State University, and I also have an Associate Degree in Medical Laboratory Technology. Therefore, please take into consideration that this is my first *violation* ever. I have never been in trouble before[,] not even as a youth.
>
>        Finally, if it seem[s] right to your Honor to reconsider sentencing me to an alternate sentence and/or program instead of my current sentence of twenty split five for my *violation* to an already overcrowded Department of Corrections.

(Doc. 11, Exhibit 2, at 67 (emphasis supplied)).

gained pursuant to an unconstitutional search and seizure, an unlawful arrest, and the court was without jurisdiction to accept his guilty plea (Doc. 11, Exhibit 2, at 9; *see also id.* at 10-11); (2) the trial court was without jurisdiction to render judgment or impose sentence with respect to the two distribution counts because the indictments (or at least the indictment directed to conduct on December 29, 2009) did not state that there was a concurrence of 12 or more people to indict him nor did it contain the foreperson's signature and the two indictments did not specify one of the six means—that is, sell, furnish, manufacture, deliver, distribute, etc.—by which he could be found guilty of violating Ala.Code § 13A-12-211 (*see id.* at 12-15); and (3) ineffective assistance of trial counsel, on account of counsel's (a) failure to file a motion to suppress evidence obtained pursuant to an unconstitutional search and seizure; (b) failure to properly investigate the circumstances surrounding his case by specifically not interviewing witnesses—Fred's part-time pharmacist and pharmacy technicians—to refute the State's evidence regarding any alleged thefts of drugs, and by failing to subpoena Fred's controlled substances logbook and records that would have shown that the October 8, 2009 inventory was consistent with the inventory prior to when he became supervising pharmacist; (c) failure to explain the essential elements of unlawful distribution and its lesser-included offenses; and (d) failure to bring to the court's attention that one of the police officers who searched his home on January 14, 2010 left a set of car keys in the home and also removed $700 (*id.* at 17-22).

The State filed its answer and motion to dismiss on October 18, 2012. (Doc. 11, Exhibit 2, at 27-40). That same date, the trial court entered its order dismissing Miller's Rule 32 petition. (*See id.* at 68-80).

Petitioner appeared in Court with retained counsel, waived reading of the indictments and pled not guilty to Distribution of a Controlled Substance in CC10-2319 and CC10-2320 on August 18, 2010. Petitioner's counsel withdrew and Petitioner's new counsel filed a notice of appearance on October 19, 2010. Petitioner appeared in Court with his new retained counsel on November 15, 2010, waived reading of the indictments and pled not guilty to Distribution of a Controlled Substance in CC10-2319 and CC10-2320 and Theft of Property Second in CC10-3391. On February 16, 2011, Petitioner waived trial by jury in each of the cases, withdrew his pleas of not guilty and pled guilty. Petitioner was then adjudged guilty and was sentenced to 20 (twenty) years split to serve five (5) years in the state penitentiary balance suspended for five (5) years of formal probation, with the sentences to run concurrently. Petitioner did not appeal. Petitioner has now filed a petition for postconvicton relief. It was filed on February 13, 2012.

PETITIONER'S CLAIMS

Petitioner alleges the Constitution of the United States or the State of Alabama requires a new trial, a new sentence proceeding, or other relief because his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure and his conviction was obtained by use of evidence obtained pursuant to an unlawful arrest. In support of this allegation, Petitioner states at the time of his arrest, the officers did not have a search warrant or an arrest warrant. Specifically, Petitioner states according to court records, an officer exceeded the scope of a Terry pat and conducted a full blown search of his person. Petitioner further alleges the officer conducted an illegal search of his house, papers and effects without having probable cause and therefore all evidence seized was inadmissible. This allegation is precluded.

A Petitioner will not be given relief under this rule based upon any ground which could have been, but was not, raised at trial and on appeal. R. 32.2(a)(3) and (a)(5). See also Dedeaux v. State, 976 So.2d 1045, 1048 (Ala.Crim.App. 2005) (Dedeaux's claims that his conviction was obtained by use of evidence obtained pursuant to an unconstitutional search and seizure because the officers lacked jurisdiction to conduct a warrantless search of his vehicle and his conviction was obtained by use of evidence obtained pursuant to an unlawful arrest because the officers lacked jurisdiction to arrest him were properly denied by the trial court because the claims were nonjurisdictional and therefore precluded by Rule 32.2(a)(3)). Thus, Petitioner's allegation is precluded because it could have been, but was not, raised and addressed at trial and on appeal. R. 32.2(a)(3) and (a)(5).

Additionally, the claim is without merit. ALA. CODE § 15-10-3(a) (1975) provides authorization for an arrest without a warrant when an officer has reasonable cause to believe that the person arrested has committed a felony. Warrantless searches are per se unreasonable unless they fall within a recognized exception. See Allen v. State, 44 So.2d 525, 528 (Ala.Crim.App. 2009), quoting Ex parte Hilley, 484 So.2d 485 (Ala. 1985). Those exceptions include: objects in plain view, consensual searches, a search incident to a lawful arrest, hot pursuit or emergency situations, probable cause coupled with exigent circumstances, and a Terry stop. See id., citing Daniels v. State, 276 So.2d 441 (Ala. 1973).

Contrary to Petitioner's assertion that the Court records support his argument, there are no Court records which detail his arrest and/or the search. Petitioner pled guilty, thus there was no trial; however there were preliminary hearings that were recorded and transcribed prior to the indictments. In this case, during the preliminary hearing regarding the Theft of Property offense, Officer Patrick McKean testified that on January 14, 2010, Officers went to Petitioner's place of employment to arrest him for two (2) outstanding distribution charges. See State's Exhibit "A." After he was arrested, he was found to be in possession of controlled substances that were determined to be stolen from the pharmacy he was employed by on that date. See id. at pp. 4, 8, 10 and 11. Officer McKean further testified that during the preceding month and a half, the Officers had conducted controlled buys from this Petitioner. See id. at pp. 3 and 4. Furthermore, during the preliminary hearing regarding one (1) of the distribution offenses, Officer Spencer testified that Petitioner consented to a search of his residence. See State's Exhibit "B."

Clearly, based on the officers' month long investigation and controlled buys from this Petitioner, the officers were authorized to arrest him without a warrant and then search his vehicle and the bag he was carrying incident to the arrest and for inventory purposes. Furthermore, Petitioner consented to the search of his residence. Thus, Petitioner's claim that his arrest was unlawful, he was illegally searched and the drugs found were illegally seized is without merit. The officers had reasonable cause to believe that Petitioner had committed a felony, Petitioner has therefore failed to state a claim and has failed to raise a material issue of fact or law which would entitle him to relief. Rule 32.7(d).

Petitioner next alleges the Court was without jurisdiction to render the judgment or to impose the sentence because his indictments were defective. Specifically, Petitioner alleges the indictments were merely a citation of the statute and included all the ways a distribution could occur, the indictments failed to contain an endorsement showing at least 11 (eleven) grand jurors were present and the indictments were not endorsed true bills or signed by the foreman. This allegation fails. The validity of the

indictment is irrelevant to whether the circuit court had subject matter jurisdiction over [the] case. See Ex parte Seymour, 946 So.2d 536, 539 (Ala. 2006). Thus, a defendant who challenges a defective indictment is subject to the same preclusive bars as one who challenges any other nonjurisdictional error. See id. Thus, this allegation is precluded because it could have been, but was not, raised at trial and on appeal. R. 32.2(a)(3) and (a)(5).

This allegation is also without merit. An indictment is sufficient if it tracks the language of the statute and if the statute prescribes with definiteness the elements of the offense. See Fowler v. State, 890 So.2d 1101, 1102 (Ala.Crim.App. 2004), citing Ex parte Allred, 393 So.2d 1030 (Ala. 1980). ALA.CODE § 13A-12-211 (1975) provides in pertinent part: a person commits the crime of unlawful distribution of [a] controlled substance if he sells, furnishes, gives away, [manufactures,] delivers, or distributes a controlled substance. In this case, Petitioner was charged with distribution of a controlled substance: dihydrocodeinone (hydrocodone) in CC10-2319 and distribution of a controlled substance: codeine in CC10-2320.

In each of the cases, the indictments track the language of the statute and sufficiently define the offense with definiteness such that an ordinary person can understand that the conduct is prohibited. See State's Exhibits "C" and "D." See also Hightower v. State, 592 So.2d 658, 658-659 (Ala.Crim.App. 1991) (Hightower's indictment which read in pertinent part: did unlawfully sell, furnish, give away, manufacture, deliver or distribute a controlled substance was valid where it tracked the statutory language of ALA.CODE § 13A-12-211 (1975)). Thus, Petitioner's allegation that the indictment charged all six (6) ways the drug could be distributed was not specific enough to inform him of what he had to defend against, is without merit.

Petitioner's allegation that the indictments are void because they are not endorsed as true bills nor are they signed by the Grand Jury Foreperson is also without merit. ALA.CODE § 12-16-204 (1975) provides that the concurrence of at least 12 (twelve) grand jurors is necessary to find an indictment, and when so found, it must be endorsed a true bill and the endorsement signed by the foreman. ALA.CODE § 15-8-70 (1975) further provides in pertinent part that all indictments must be presented to the court by the foreman of the grand jury in the presence of at least 11 (eleven) jurors and must be endorsed. See also ALA.R.CRIM.P. 12 (An indictment shall not be returned without the concurrence of at least 12 (twelve) grand jurors and when an indictment is found, it must be endorsed a true bill, signed by the foreman and returned and filed in open court by the foreman in the presence of at least 11 (eleven) other members of the grand jury).

It is well settled that the signature of the grand jury foreman signifies the concurrence of 12 (twelve) or more grand jurors. See Jackson v. State, 12 So.3d 720, 722 (Ala.Crim.App. 2007)[,] citing Birdsong v. State, 929 So.2d 1027 (Ala.Crim.App. 2005). In this case, Petitioner's indictments were signed by the grand jury forepersons, endorsed true bills and presented to the Court in the presence of 17 (seventeen) other grand jurors in CC10-2319 and CC10-2320 and in the presence of 15 (fifteen) other grand jurors in CC10-3391. See State's Exhibits "C," "D," and "E." Thus, Petitioner's allegation is completely without merit and refuted by the record. Petitioner has failed to state a claim and he has raised no material issue of fact or law which would entitled him to relief. R. 32.7(d).

Petitioner finally alleges the Constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief because he was denied effective assistance of counsel in several instances. The allegations will be addressed separately below.

In order to show that his counsel was ineffective, Petitioner would have to show unto this Court (1) that his Counsel's performance was deficient, and (2) that he was prejudiced by that deficient performance. See Strickland v. Washington, 466 U.S. 668, 687[,] 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To sufficiently plead an allegation of ineffective assistance of counsel, a Rule 32 petitioner not only must ["]identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,["] []id. at 690, but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating ["]that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.["] [ I]d. at 694. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient.[] See Hyde v. State, 950 So.2d 344, 355 (Ala.Crim.App. 2006).

Furthermore, in the context of a guilty plea proceeding, a petitioner must also show that, but for Counsel's errors, the petitioner would not have pleaded guilty but would have insisted on proceeding to trial. See Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). It is important to note that when a court reviews a post[-]conviction claim for relief based on ineffective assistance of counsel, the court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689. Strickland v. Washington makes clear that[] "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." [ I]d. at 691.

Petitioner has failed to meet the Strickland test, therefore these claims should fail. Petitioner first alleges he was denied effective assistance of trial counsel because trial counsel failed to file a motion to suppress and/or a motion to dismiss the evidence because it was obtained illegally. This allegation fails. As discussed above, on January 14, 2010, Petitioner was arrested. The arrest was based on controlled buys conducted by the officers on previous occasions. See also State's Exhibit "F." Clearly, the officers had reasonable cause to arrest the Petitioner on January 14, 2010. Counsel cannot be ineffective for failing to file a motion for which there is no legal basis. See U.S. CONST. amend VI; see also Patrick v. State, 680 So.2d 959, 963 (Ala.Cr[im].App. 1996); Hope v. State, 521 So.2d 1383, 1386 (Ala.Cr[im].App. 1988). Petitioner has failed to show that his trial counsel's performance was deficient and that he was prejudiced by that alleged deficient performance under Strickland.

Petitioner next alleges that he was denied effective assistance of counsel because his trial counsel failed to interview witnesses and fully investigate any of the circumstances surrounding his case. In support of this allegation, Petitioner states his trial counsel failed to interview two (2) of the pharmacy employees who would have refuted any allegations regarding the theft. Additionally, Petitioner alleges his trial counsel was ineffective because she failed to subpoena the pharmacy's controlled substance logbook and records which would have shown that on October 8, 2009, the pharmacy conducted its own inventory and that inventory showed no discrepancies. This allegation also fails. The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings. R. 32.6(b).

Here, Petitioner fails to allege the names of the witnesses, where the witnesses lived, how to contact those witnesses and whether they would have come to Court and testif[ied] during a trial of this matter. Thus, this allegation fails for lack of specificity. R. 32.6(b). See also Williams v. State, 489 So.2d 4, 7 (Ala.Crim.App. 1996) (Williams['s] allegation that he was denied effective assistance of counsel was devoid of factual merit and support where Williams failed to identify who the witnesses were and the substance of their testimony). Additionally, this allegation is without merit. While Petitioner states those alleged witnesses would have testified as to the procedure of ordering controlled substances, that is irrelevant to whether Petitioner stole controlled substances from the pharmacy. Also, the fact that these witnesses would have testified to an inventory that occurred two (2) months before the first controlled buy occurred is also irrelevant.

11

Furthermore, Petitioner's allegation that trial counsel was ineffective in failing to subpoena the logbook of the pharmacy because it would have shown in October 2009 that there were no discrepancies is completely irrelevant. Petitioner was arrested on January 14, 2010 for the theft of codeine syrup and two (2) bottles of lortab pills. See State's Exhibit "E." The theft of the controlled substances occurred on January 14, 2010. The controlled buys occurred on December 29, 2009 and January 5, 2010. See State's Exhibits "C" and "D." Thus, it is completely irrelevant that a pharmacy logbook showed an inventory that contained no discrepancies in October 2009. Petitioner's allegation is completely without merit. Counsel cannot be ineffective for failing to file a motion for which there is no legal basis. See U.S. CONST. amend VI; see also Patrick v. State, 680 So.2d 959, 963 (Ala.Cr[im].App. 1996); Hope v. State, 521 So.2d 1383, 1386 (Ala.Cr[im].App. 1988). Petitioner has failed to show that his trial counsel's performance was deficient and that he was prejudiced by that alleged deficient performance under Strickland.

Petitioner next alleges he was denied effective assistance of counsel because his trial counsel failed to explain to him the essential elements of unlawful distribution. Specifically, Petitioner alleges that "had he been informed of the elements, which alleges six (6), based on the facts in his case" he would not have pleaded guilty. This allegation fails. The State is not sure what Petitioner is alleging, nor will it assume the argument Petitioner attempts to make. The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceeding. R. 32.6(b).

The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. See id. at p. 5, quoting Hyde v. State, 950 So.2d 344, 356 (Ala.Crim.App. 2006), quoting in turn Cracknel v. State, 883 So.2d 724 (Ala.Crim.App. 2003). Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). See id. The **full** factual basis for the claim must be included in the petition itself. See id. (emphasis added). If, assuming all the factual allegations in the petition to be true, a Court cannot determine whether the Petitioner is entitled to relief, the Petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See id.

Petitioner next alleges his trial counsel was ineffective for failing to inform him regarding the charged crime and the lesser included offenses and he was therefore unable to make an informed decision as to whether to plead guilty. This allegation also fails. Based on the facts of the

offenses in CC10-2319 and CC10-2320, there is no lesser included offense. See Watford v. State, 611 So.2d 1170, 1172 (Ala.Crim.App. 1992) (Watford's claim that double jeopardy was violated when he sold cocaine to an undercover officer and was also convicted of possession of cocaine arising from the same incident and the possession of cocaine was a lesser included of the distribution, was without merit because the possession and distribution did not have identical statutory elements). Thus, Counsel cannot be ineffective for filing to file a motion for which there is no legal basis. See U.S. CONST. amend VI; see also Patrick v. State, 680 So.2d 959, 963 (Ala.Cr[im].App. 1996); Hope v. State, 521 So.2d 1383, 1386 (Ala.Cr[im].App. 1988). Petitioner has failed to show that his trial counsel's performance was deficient and that he was prejudiced by that alleged deficient performance under Strickland.

As to CC10-3391, the offense is self explanatory. Petitioner was charged with stealing controlled substances from his employer. Petitioner was a pharmacist. See State's Exhibit "G." Thus, even if his trial counsel failed to advise him of the elements of Theft of Property and/or that there was a lesser included, Petitioner was well equipped to understand the elements of the offense. Furthermore, based on the facts of this case, it is unlikely that the outcome of the proceeding would have been different, considering Petitioner confessed to stealing the drugs. See State's Exhibit "A, p.5." The State has brought to the Court's attention[,] and this Court takes note, that Petitioner seemingly understood the rules of this proceeding, without the assistance of counsel, where Petitioner filed the petition first and then filed the memorandum at a later date. This seemingly was done by the Petitioner to keep from running into the limitations preclusive effect of this rule. Thus, Petitioner has failed to show that his trial counsel's performance was deficient and that he was prejudiced by that alleged deficient performance under Strickland.

Petitioner finally alleges he was denied effective assistance of trial counsel because his trial counsel failed to bring to the Court's attention the fact that a set of police keys were found in his residence approximately five (5) days after he was arrested. This allegation also fails. The Petitioner fails to state, nor does the State understand the relevance of this statement. Petitioner claims that this statement supports his assertion that the officers violated his constitutional rights against unreasonable search and seizure, but fails to provide any other facts or information regarding this claim. The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings. R. 32.6(b). The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. See id. at p.5, quoting Hyde v. State, 950 So.2d 344, 356 (Ala.Crim.App.

2006), quoting in turn Cracknel v. State, 883 So.2d 724 (Ala.Crim.App. 2003).

Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). See id. The *full* factual basis for the claim must be included in the petition itself. See id. (emphasis added). If, assuming all the factual allegations in the petition to be true, a Court cannot determine whether the Petitioner is entitled to relief, the Petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See id. Based on the Petitioner's assertions, Petitioner's trial counsel cannot be ineffective for failing to advise the Court of a statement or fact for which there is no legal basis. See U.S. CONST. amend VI; see also Patrick v. State, 680 So.2d 959, 963 (Ala.Cr[im].App. 1996); Hope v. State, 521 So.2d 1383, 1386 (Ala.Cr[im].App. 1988). Petitioner has failed to show that his trial counsel's performance was deficient and that he was prejudiced by that alleged deficient performance under Strickland.

As stated above, this allegation is also without merit, because Petitioner consented to a search of his residence. See State's Exhibit "B." Thus, Petitioner has failed to state a claim and he has failed to raise a material issue of fact or law which would entitled him to relief. R. 32.7(d).

Accordingly, this Court finds the Petitioner's arrest and subsequent search were lawful and any and all evidence obtained was lawfully obtained and would have been admissible. The Court further finds the Petitioner's trial counsel was effective in her representation of this Petitioner. This Court is therefore authorized to summarily dismiss the petition without an evidentiary hearing because the petition fails for lack of specificity, Petitioner has failed to meet his burden of pleading, for failure to state a claim and for having raised no issue of material fact or law[,] the allegations raised are precluded because they could have been, but were not, raised and addressed at trial and on appeal, Petitioner has failed to state a claim and he has failed to raise a material issue of fact or law which would entitle him under this Rule and the claims are without merit.

The petition is dismissed under Rule 32.7.

(*Id.*) Miller did not appeal the denial of his first Rule 32 petition. (*Compare* Doc. 4, at 5[7]

with Doc. 11, Exhibit 3, at 9 ("Petitioner did not appeal [from the October 18, 2012

summary dismissal of his Rule 32 petition].")).

---

[7]    According to Miller, he "did not understand the appeal [p]rocess or didn't know he had a right to an appeal. Again, no legal assistance to advise about an appeal." (*Id.*)

Thereafter, it appears that Miller requested transfer into the Mobile Community Corrections Program, which was denied on April 3, 2013 (Doc. 11, Exhibit 3, at 3); filed a motion for reconsideration of sentence during the last quarter of 2013, which was denied on December 16, 2013 (Doc. 11, Exhibit 1, at 35); and filed another motion for reconsideration and modification of split sentence which was denied on June 23, 2014 (*id.* at 37).

On or about November 4, 2014, Miller filed his second Rule 32 petition attacking his convictions and sentences. (Doc. 11, Exhibit 3, at 1-29.)[8] Therein, Miller raised the following two claims: (1) the court was without jurisdiction to render judgment or to impose sentence because his twenty year split five year sentence with respect to his second-degree theft of property conviction exceeded the statutory maximum authorized by law for a Class C felony where petitioner was not a habitual offender; and (2) there was a fatal variance in the theft of property indictment because the indictment did not identify the owner of the property which Petitioner allegedly exerted unauthorized control over. (*See id.* at 22-27.) Miller filed a motion to amend his Rule 32 petition, on or about December 17, 2014, and therein raised an innocuous claim of ineffective assistance of counsel (*compare* Doc. 11, Exhibit 3, at 37-41 (court's order)) *with id.* at 31-36 (State's February 20, 2015 reply)).  After Mobile County Circuit Judge Ben Brooks's February 23, 2015 summary dismissal of Miller's claims, save for the claim regarding whether Petitioner's second-degree theft of property conviction was illegal, which was set for an evidentiary hearing on April 9, 2012 (*see id.* at 37-41), Miller filed a

---

[8]      Miller executed the petition on October 23, 2014 (*id.* at 8) but did not certify when the petition was being mailed (*see id.* at 7).

motion for reconsideration on March 9, 2015 (*id.* at 43-44), to which he attached a brief raising the following claims of ineffective assistance of counsel: (1) trial counsel failed to conduct a preliminary investigation and pursue alibi witnesses, namely his mother, Josie Rush, and Retired Chief Naval Petty Officer Veronica Ann Bailey, who would have testified that Petitioner was in San Antonio, Texas on December 23, 2009 (and not in Mobile, Alabama); (2) trial counsel failed to appropriately challenge the constitutional validity of the arrest warrant because the record does not support a finding of probable cause for petitioner's arrest without a warrant on January 14, 2010; (3) trial counsel failed to challenge the constitutional validity of the search incident to the arrest; (4) trial counsel failed to challenge the illegal search of his home after his arrest on January 14, 2010; and (5) trial counsel failed to file a motion to suppress the evidence obtained by the unlawful search and seizure of his person. (*See* Doc. 11, Exhibit 3, at 45-71.)

An evidentiary hearing was conducted on April 9, 2015. (Doc. 15, Exhibit 6.) The parties agreed that the sentence imposed on February 16, 2011, with respect to the theft charge, was illegal. (*Id.* at 5-6.) The parties debated the appropriate remedy but could not reach agreement in that regard. (*See id.* at 6-13.) Then, the court addressed the ineffective assistance of counsel claims raised by way of the motion for reconsideration since those claims were, at least in part, directed to one of the distribution counts (*see id.* at 15-19) and inquired into whether these claims could be properly raised from a procedural standpoint (*see id.* at 19-22). Ultimately, testimony was taken from Miller solely regarding the timeliness of his motion (*compare id.* at 26 & 28 *with id.* at 29-43).

> Q.     You pled to this case and you were sentenced on February 16, 2011; is that correct?

A.      Yes, sir.

Q.      And do you recall when you filed your first Rule 32 petition in this matter?

A.      On February 13, 2012.

Q.      2012. And in between your sentencing date and your filing of your first Rule 32 petition, did you petition the Court for any other relief as it relates to your financial status or anything in that regard?

A.      Yes, sir.

Q.      How did you do that?

A.      I actually filled out the in forma pauperis forms, the application, that is, and I forwarded it to the Court. And I . . . didn't receive anything at first. Then I filed a . . . status motion requesting the status of my in forma pauperis and my application of substantial hardship.

        And around April 25 or 28[, 2012] I received that motion in my legal mail at the Loxley work release center stating that my in forma pauperis and my substantial application for hardship had been denied.

                          .        .        .

Q       Mr. Miller, I believe I briefly showed you this. I'm not entering it as an exhibit. . . . But this is – you can see this was electronically filed October 18, 2012. Do you see that, sir?

A.      Yes, sir.

Q       And you see the date on this . . . an order from Judge Wood that grants you that indigent status, correct?

A.      Yes, sir.

Q.      Again, that's October 18, 2012?

A.      Yes, sir.

Q.      And you see that it was electronically signed by Judge Wood?

A.      Yes, sir.

Q.    Are you familiar with this document?

A.    No, sir.

Q.    Did you ever receive that document?

A.    No, sir.

Q.    But based on what I showed you in court today, there's a court document, an order from Judge Wood dated October 18 that was granting you your indigent status?

A.    Yes, sir.

Q.    And you did not receive a copy of that?

A.    No, sir.

Q.    Now, when did you file your first Rule 32 petition?

A.    It was February 13, 2012.

Q.    And what became of that petition?

A.    Well, I actually periodically between the eight-month span from the date I filed to the date that it was summarily dismissed, I received several pieces of legal mail stating that a hearing was actually set for my Rule 32. I wasn't sure what it pertained [to], but I received several documents saying that it was set for July or around August or something to that degree.

Q.    Of what year just for –

A.    Of 2012, sir, the same year, 2012. Subsequently, it kept getting postponed. And then on October 18[, 2012] I received legal mail stating that my Rule 32 was summarily dismissed.

                              .        .        .

Q.    And then after you received the order dismissing your petition, what did you do at that point?

A.    Well, *I felt  that something was wrong because how can I be granted in forma pauperis on the same day that my petition was summarily dismissed*. So I got to doing a little research and reading pertaining to the Rule 32 petition. And I realized that . . . some of the

Alabama statute and the laws indicated that a fee is required if you are not granted in forma pauperis status. So because I was denied in forma pauperis status because I didn't receive the letter saying that I was granted and I had never paid the filing fee, so from what I understood of the law and all the different statutes and things – I'm not a lawyer. But to the best of my ability I comprehended that the Rule 32 would not be properly before the Court to rule on the Rule 32 from my understanding.

Q.     Because you didn't pay the filing fee?

A.     And I was denied my in forma pauperis. So I figured after I did a little more researching and continued on reading and studying, you know, the available books that I had . . ., I realized that perhaps maybe I could file a second Rule 32. . . . I read a case, Mosley versus State where he sent a Rule 32 petition up to appeal court. And because he failed to pay the filing fee and was denied in forma pauperis, the appellate court said that they didn't have the jurisdiction to hear the case and they sent it down. So that's why I didn't appeal the case.

So when I found that I had some other jurisdictional issues going on . . . I assumed . . . that since my first Rule 32 would hopefully be ruled void, I would have an opportunity to raise ineffective assistance of counsel in this petition.

Q.     I gotcha. And that's why you filed the second petition?

A.     Absolutely. Yes, sir.

Q.     But just for the record – just for purposes of the record, why did you not appeal your initial dismissal of your petition?

A.     Because, one, I didn't have the fee to appeal. And I wasn't a hundred percent familiar on the process at the time. . . .

Q.     . . . Let me ask you this, Mr. Miller. But I want this clear for the record though. You didn't appeal because you were under the assumption you needed a filing fee? Or what are you saying?

A.     I'm saying I didn't appeal it, one, because I didn't know that I could have appealed it because I didn't receive any kind of notice when my petition was summarily denied that I can appeal it. . . . So I didn't know how to go about the process at that time to appeal it. And, furthermore, like I said, I didn't receive anything on my right to appeal it.

.     .     .

Q.     All right. Are you aware in the actual Rule 32 that it lists when you can appeal as a part of the actual rule itself?

A.     Like I said, now that I am, yes, ma'am. Because like I said, I have found – on my second filing of my second petition, I became a little more familiar with it. But in my first Rule 32, no, ma'am, I was not aware of that because I didn't have access to that material at that time.

Q.     Did . . . you send anything to the judge to ask could you appeal?

A.     No, ma'am.

Q.     ***And you said you didn't appeal because you didn't have the fee; is that right?***

A.     ***No, ma'am. I didn't appeal because I didn't know I had the right to appeal that.***

(*Id.* at 30-31, 32-33, 35-37, 38 & 43 (emphasis supplied)).

The same day the evidentiary hearing took place, that is, April 9, 2015, Judge

Brooks entered an order reading in relevant part as follows:

Based upon the arguments of counsel, the Court's review of the record, the prior orders entered by the Court, the testimony of Bruce Elliott Miller, and applicable law, the Court orders the following:

1.     No later than May 8, 2015 each party shall provide the Court with a proposed Order addressing the Petitioner's claim which was not dismissed on February 23, 2015—that is, the alleged illegality of the sentence imposed on February 16, 2011 on the charge of Theft of Property Second Degree in CC-10-3391.

Both parties agreed in open Court that the sentence imposed (i.e., 20 years, split to serve 5 years) exceeded the maximum since the Petitioner had no prior qualifying felonies. The parties agreed that the maximum range for the sentence for the charge was from one year and one day up to ten years. The State asserted that the appropriate remedy would be to set aside the sentence and simply re-sentence the Petitioner in CC-10-3391. The Petitioner, through appointed counsel, conceded that the State's proposal would be legally permissible but argued that the Court should consider not only setting aside the sentence, but, in consideration of the totality of the circumstances, the Court should also allow the Defendant to withdraw his guilty plea in the case.

> 2.     No later than May 8, 2015 each party shall provide the Court with a Brief and a proposed Order addressing the issues the Petitioner seeks to raise in his "Motion to Reconsider Claims Asserted in his Second Rule 32 Petition Other Than The Issue [of] Whether Petitioner's Sentence was Illegal." This Motion applied to all three cases (CC-10-2319.61, CC-10-2320.61, and CC-10-3391.61).
>
> The State asserted that the other claims, other than the legality of the sentence in the Theft 2nd claim, essentially allege theories of ineffective assistance of counsel. The State asserted that the Petitioner is not due relief on these other claims since they are non-jurisdictional, are precluded by Ala.R.Crim.P. 32.2, the Petition currently before the Court is a successive petition (that is, the Petitioner previously filed a Rule 32 Petition), and the Defendant failed to appeal the October 18, 2012 Order dismissing the first Rule 32 Petition.
>
> The Petitioner testified that he did receive the October 18, 2012 Order from Judge Wood dismissing his first Rule 32 Petition. The Petitioner also testified that he had received an April 25, 2012 Order from Judge Wood denying Petitioner's In Forma Pauperis Declaration (for the first Rule 32 Petition), but later received an October 18, 2012 Order granting the Petitioner's In Forma Pauperis Declaration (for the first Rule 32 Petition). The Petitioner also essentially testified that he did not appeal the Order dismissing his first Rule 32 Petition because he did not have the fee and because he did not understand the process for appeal or did not realize he had to appeal.
>
> The Court hereby Orders that the Petitioner shall be immediately transported back to the Loxley Work Release Center.

(Doc. 11, Exhibit 3, at 73-74.)

Following receipt of the parties' briefs and proposed orders (*see id.* at 75-101),

the trial court entered an Order on May 11, 2015 reading, in relevant measure, as

follows:

> The Petitioner was granted *in forma pauperis* status in the first Rule 32 Petition. Petitioner received the order of October 18, 2012 dismissing the first Rule 32 Petition and Petitioner failed to take any action. On February 1[6], 2011 the Petitioner was sentenced to 20 (twenty) years,

split to serve five (5) years, with the balance suspended for five (5) years of formal probation in CC10-3391, Theft of Property Secon[d]. Theft of Property Second is a Class C felony and the record does not indicate that the Petitioner had any prior qualifying felonies to enhance this sentence.

The Petitioner's sentence does not fall within the statutory range and the Petitioner is entitled to be re-sentenced. See *Holliday v. State,* 75 So.3d 1220, 1224 (Ala.Crim.App. 2011) (Holliday challenged his guilty plea and sentencing, claiming the sentences were unauthorized because his sentence was improperly enhanced under the Habitual Felony Offender Act[;] because Holliday's sentence might not fall within the statutory range, the illegal sentence was remanded to the sentencing court for a proper sentence).

The Petitioner's Motion to Reconsider, filed on March 12, 2015, is due to be denied. Petitioner has failed to disprove the grounds of preclusion asserted by the State in its response, by a preponderance of the evidence as required by Rule 32.3.

The Petitioner's claims are time-barred and because Petitioner has failed to show equitable tolling applies, his claims should be summarily dismissed. Rule 32.2(c), see *Ex parte Ward,* 46 So.3d 888 (Ala. 2007) and *Davenport v. State of Alabama,* 987 So.2d 652 (Ala.Crim.App. 2007).

The Petitioner reasserts his claim regarding a fatal variance. Petitioner asserts that such a claim is a jurisdictional claim. However, the law is clear that a claim of a variance between the indictment and the proof does not raise a jurisdictional claim. *See Ex parte Robey,* 920 So.2d 1069 (Ala. 2004). Thus, this issue is subject to the procedural bars of this rule. This claim is therefore precluded by the limitations period. R. 32.2(c). This claim is also precluded because it could have been, but was not, raised and addressed at trial and on appeal. R. 32.2(a)(3) and (a)(5).

The Petitioner next requests this Court to reconsider its dismissal of his claim that the trial court was without jurisdiction to dismiss his first Petition because he was not granted *in forma pauperis* and did not pay the filing fee. The Petitioner claims that this entitles him to equitable tolling. This claim also fails.

In *Ex parte Ward,* 46 So.2d 888 (Ala. 2007), the Alabama Supreme Court held that equitable tolling is available in extraordinary circumstances that are beyond the Petitioner's control and that are unavoidable even with the exercise of diligence. See *id.* at 897. The Court went on to note that the threshold necessary to trigger equitable tolling is very high. See *id.,* quoting *United States v. Marcello,* 212 F.3d 1005, 1010 (7th Cir. 2000). The burden of establishing entitlement to this extraordinary remedy rests

with the Petitioner and a petition that does not assert equitable tolling or asserts it but fails to state any principle of law or any fact that would entitle the Petitioner to the tolling may be summarily dismissed without a hearing. See *id.* at[] 897-98, citing *Drew v. Department of Corr.,* 297 F.3d 1278, 1286 (11th Cir. 2002) and Ala.R.Crim.P. 32.7(d). In this case, the Petitioner testified at the Evidentiary Hearing that he received the Court's order summarily dismissing the first petition and he failed to take any action. Clearly, the doctrine of equitable tolling does not apply where Petitioner admits he did not exercise any diligence in pursuing his claims.

Finally, the Petitioner's Motion to Reconsider raises claims of ineffective assistance of counsel. Specifically, Petitioner claims his trial counsel was ineffective for failing to familiarize herself with relevant facts and law regarding the case, failed to timely and appropriately challenge the validity of the arrest, failed t[o] challenge the validity of the search incident to the arrest, failed to challenge the search and seizure of his home, and failed to file a motion to suppress the evidence obtained from the search and seizure. Those claims are precluded by the limitations period.

The Court shall not entertain any petition for relief from a conviction or sentence on the grounds specified in Rule 32.1(a) unless the petition is filed within one (1) year after the time for filing an appeal lapses. R. 32.2(c). In this case, the Petitioner pled guilty and was sentenced on February 16, 2011 and he did not appeal. This Petition was filed on November 4, 2014. Clearly, this Petition is precluded by the limitations period. R. 32.2(c). See *Cogman v. State,* 852 So.2d 191, 192 (Ala.Crim.App. 2002) (a claim of ineffective assistance of counsel is a non-jurisdictional claim and is subject to the procedural bars of Rule 32); see also *Andrews v. State,* 38 So.3d 99, 100-101 (Ala.Crim.App. 2009) (allegations of ineffective assistance of counsel which are neither jurisdictional nor newly discovered are precluded if not timely filed within the limitations period).

Accordingly, this Court finds Petitioner's claim that his sentence in CC10-3391 exceeds the statutory maximum for Theft of Property Second is due to be granted. Petitioner shall be re-sentenced in that case only.

This Court further finds that the doctrine of equitable tolling does not apply in this case. The Petitioner was granted *in forma pauperis* status in the first Petition, an Order was entered on October 18, 2012 dismissing the first Petition, and the Petitioner failed to take any action.

This Court also finds that the Petitioner's Motion to Reconsider is due to be denied. Petitioner has failed to disprove the preclusive grounds asserted by the State by a preponderance of the evidence as required by

Rule 32.3. The Petitioner's claims of fatal variance and ineffective assistance of counsel are non-jurisdictional claims that are precluded by the limitations period and because they could have been, but were not, raised and addressed at trial or on appeal.

**Therefore, with the exception of the claim that the sentence in CC-10-3391 exceeds the maximum statutory sentence, the other claims in this Petition are hereby DISMISSED under Ala.R.Crim.P. 32.7.**

The Court grants the claim for relief in the Petition that the sentence in CC-10-3391 exceeds the statutory maximum. The portion of the February 17, 2011 Order which imposed the illegal sentence states:

> . . . AND IS NOW SENTENCED BY THE COURT TO THE STATE [OF] ALABAMA PENITENTIARY FOR THE TERM OF 20 YEARS/SPLIT TO 5 YEARS TO SERVE/TO RUN CONCURRENT WITH CC-2010-2319, 2320. DEFENDANT TO BE GIVEN CREDIT FOR ___ DAYS FOR TIME SPENT IN JAIL.
>       ON RECOMMENDATION OF THE STATE; EXECUTION OF BALANCE OF REMAINDER OF SENTENCE IS HEREBY SUSPENDED PENDING THE GOOD BEHAVIOR OF THE DEFENDANT FOR A PERIOD OF 5 YEARS AND AT THE END OF SAID 5 YEARS SAID SUSPENSION IS HEREBY MADE PERMANENT. PAY $50.00 VCA AND COSTS OF COURT. DEFENDANT PLACED [IN] FORMAL PROBATION WITH STATE.

The Circuit Court hereby vacates and sets aside this portion of the February 17, 2011 Order in CC-10-3391. All other aspects and provisions of the February 17, 2011 Order in CC-10-3391 shall remain in full force and effect.

**The Court hereby schedules the Defendant for a Hearing on Re-sentencing in CC-10-3391 on June 16, 2015 at 2:00 p.m. in Courtroom 6400.**

(Doc. 11, Exhibit 3, at 102-06.)

Miller actually appeared back before Judge Brooks on June 17, 2015 for re-sentencing on his second-degree theft of property case; he was sentenced to time served and released from custody on that case only. (*Id.* at 108.) A supplemental order

was entered that same date, that is, June 17, 2015, memorializing that the Defendant, in open court, "waived his right to any further post conviction relief through Rule 32 proceedings or appeals as part of the negotiated agreement." (*Id.* at 109.)

That same day, June 17, 2015, the trial court ordered the remainder of Miller's five year split sentences in his distribution cases "to be served with Mobile County Community Corrections Institutional Diversion Program." (Doc. 11, Exhibit 1, at 39 & 47.) "The Defendant is to be released immediately from the custody of the Loxley Work Release Center into the custody of Mobile County Community Corrections. After the completion of the diversion program, the Defendant is to be placed on probation for a period of five years with Mobile County Community Corrections." (*Id.*) And as with Miller's second-degree theft of property case, supplemental orders were entered on June 17, 2015 in his distribution cases memorializing that the Defendant, in open court, "waived his right to any further post conviction relief through Rule 32 proceedings or appeals as part of the negotiated agreement." (*Id.* at 40 & 46).[9]

Miller did not appeal his resentencing on his second-degree theft of property case, nor did he appeal the June 17, 2015 action taken with respect to his distribution cases; therefore, his re-sentencing on his second-degree theft of property case became final some forty-two days later, on July 29, 2015 (as would have any re-sentencing on his distribution cases, to the extent it can be argued that he was re-sentenced on those cases), when the time expired for him to file an appeal, *see* Ala.R.App.P. 4(b)(1) ("In a

---

[9]       On February 29, 2016, Miller appeared in the Circuit Court of Mobile County on his motion for unsupervised probation; his motion was reset for May 2, 2016, to allow him the opportunity "to pay the court ordered monies in . . . [his] cases." (*Id.* at 41.) Miller failed to appear on May 2, 2016, and his motion was denied after Judge Brooks confirmed that outstanding monies were still owed by Miller. (*Id.* at 48.)

criminal case a notice of appeal by the defendant shall be filed with the clerk of the trial court within 42 days (6 weeks) after pronouncement of the sentence, provided that the notice of appeal may be oral, as provided in Rule 3(a)(2)."), and, to the extent the court's orders on June 17, 2015 addressing Miller's distribution cases simply memorialized the denial of Rule 32 relief, the time for Miller to have appealed also expired (at the very least) on July 29, 2015, *see Ex parte Wright*, 860 So.2d 1253, 1254 (Ala. 2002) ("'[P]ostconviction proceedings filed pursuant to Rule 32 are civil proceedings.' . . . '[I]n all cases in which an appeal is permitted by law as of right to the supreme court or to a court of appeals, the notice of appeal required by Rule 3[, Ala.R.App.P.,] shall be filed with the clerk of the trial court within 42 days (6 weeks) of the date of the entry of the judgment or order appealed from . . . .' . . . 'In the context of postconviction relief, the 42-day appeal period runs from the date of the trial court's denial of the Rule 32 petition.'").

Miller initially filed his federal habeas corpus petition in this Court on October 28, 2016 (Doc. 1, at 19 (Miller's certification that he placed his petition in the mail on October 28, 2016)) but because it was not on this Court's form (*see* Doc. 1), he was ordered to file his action on this Court's form by December 5, 2016 (*see* Doc. 3). Miller timely filed his petition on this Court's form (Doc. 4) and also filed an accompanying brief (Doc. 5). In looking at those two pleadings, it is clear that Miller raises the following claims which he contends entitled him to federal habeas corpus relief: (1) his Fifth Amendment rights were violated because the second-degree theft of property indictment failed to charge a crime (Doc. 4, at 6; *see also* Doc. 5, at 1 ("The indictment in this matter for the theft charge is insufficient and fails to charge a crime. The State

failed to establish all the elements of the offense charged, and thus, does not satisfy the Fifth Amendment constitutional requisites of a charging instrument.")); (2) his Fifth and Fourteenth Amendment rights to due process were violated because the aforementioned second-degree theft of property indictment is void of any owner of the property and, thus, the indictment "can't stand on its own two feet[]" (Doc. 4, at 7; *see also* Doc. 5, at 1-2); (3) the "facts" underlying his distribution convictions were not adjudicated on their merits because there were factual issues in dispute[10] not resolved by the state court and, therefore, those convictions cannot stand (*see* Doc. 4, at 8; Doc. 5, at 2); and (4) ineffective assistance of counsel (Doc. 4, at 8 (referring the reader to his attached brief)), on account of counsel's failure to (a) familiarize herself with the theft of property indictment and challenge the indictment as failing to charge an offense (and for being void) because of the failure to identify the owner of the property allegedly stolen (Doc. 5, at 14-15), (b) contact alibi witnesses who would have testified to Petitioner's whereabouts on December 23, 2009, or otherwise utilize evidence in the form of airline tickets to establish that he was in Texas on December 23, 2009 (*id.* at 15-16), and (c) allow him to be sentenced on the theft charge to an unlawful term of imprisonment (*id.* at 16-17).[11]

---

[10]    According to Petitioner, he was not in Mobile on December 23, 2009, the alleged date one of the incidents took place. (*See id.* at 8). The fundamental problem with this argument, however, and one which Miller cannot overcome, is that he was neither indicted for or pled guilty to unlawful distribution of a controlled substance on December 23, 2009; instead, he was indicted for and pled guilty to unlawful distribution of a controlled substance on December 29, 2009. And because Miller offers no evidence with respect to his whereabouts on December 29, 2009, his claim necessarily fails.

[11]    These are the only claims contained in Miller's habeas corpus petition, filed on this Court's form, and his supporting brief. (Docs. 4 & 5.) And since Petitioner's subsequent pleadings either expressly disclaim that they are "amendments" to his initial pleading on this Court's form (Doc. 10 ("This letter is not to be construed in any way as an amendment to my (Continued)

In answer to the Petition, the State contends that Miller's petition is time-barred, that this Court is procedurally barred from reaching the merits of his claims, and that the claims he asserts in his petition have no merit. (*See* Doc. 11).[12] In his reply, Miller nowhere contends that he is entitled to equitable tolling of the one-year limitations period or that this Court is not procedurally barred from reaching the merits of the claims he seeks to raise in this Court (*see* Doc. 12); instead, Petitioner simply contends that his "actual innocence" is a "gateway" around the one-year limitations period and the procedural default doctrine (*see id.* at 4 ("As to case CC-10-2319 and CC-10-2320, the drug distributions, petitioner positively asserts that he is innocent."); *see also id.* at 4-6 & 8)).[13]

> On December 23, 2009, the petitioner argued that he could not have been in Mobile selling drugs to a confidential informant. This fact is true, because, the petitioner['s] Southwest Airlines record proves that the petitioner was not in the State of Alabama, let alone within the confines of Mobile [C]ounty.[14] Trial counsel also had in her possession the names of alibi witnesses and how they could be contacted and to what extent they

---

initial habeas petition[.]")) or, otherwise, sought no leave of this Court to amend his habeas petition filed on this Court's form (*see* Docs. 12, 16 & 17 (constituting Petitioner's reply, a pleading entitled "A Manifest Injustice: A Fight Against Plain Errors to Correct Wrongful Convictions," and a pleading entitled "The FACTS and EVIDENCE of the CASE: YOU SEE not only REASONABLE DOUBT but PROBABLE DOUBT")), the undersigned will not reference any other "claims" Petitioner may believe he has raised in these pleadings.

[12]    The respondent also raised the specter of whether Petitioner can attack his theft conviction since he has been released from custody with respect to that conviction. (*See id.* at 8).

[13]    Miller's additional pleadings, filed on October 27, 2017 (Doc. 16) and November 8, 2017 (Doc. 17), make no further argument against application of the one-year limitations period or the procedural default doctrine (*see id.*).

[14]    Miller attached to his Reply a copy of his Southwest Airlines Records, same reflecting that Miller flew to Houston on December 23, 2009 and had a return flight on December 27, 2009. (Doc. 12, Exhibit 3).

could testify at his trial, but failed to investigate the petitioner's alibi witness[es] and to obtain petitioner['s] flight itinerary for Southwest [A]irlines.

However, it appears that trial counsel worked in cahoots or in concert with the state prosecutor to obtain a conviction because no competent criminal defense attorney would have allowed or advise[d] his or her client to enter a guilty plea when there is indisputable evidence proving that the defendant is not guilty of doing something wrong. Had Cleveland been functioning as the effective assistance of counsel envisioned by the Sixth Amendment, trial counsel would have learned and/or discovered that Veronica Bailey would have come to court and still plans to (if required by this Court) to testify on the petitioner's behalf that he could not have been in Mobile selling drugs at the date and time alleged in the complaint.

Thus, the petitioner's Southwest Airlines records is clear and convincing evidence that places the petitioner at the relevant date and time of the crime in a different [State] rendering it impossible for the petitioner to be in t[w]o places simultaneously. To the extent that petitioner argues that his indictments are defective, it the sense that something is wrong. The petitioner moves this Honorable Court to take judicial notice that (1) the complaint on 12/23/2009 is inconsistent with the indictment returned on 12/29/2009. Not so, with 1/5/2010 complaint and indictment. Th[e]s[e] errors could not be. (2) the charges in the complaint of unlawful distribution of a controlled substance/furnish is inconsistent with Count II in both indictments. We recognize[,] of course, that the language in 13A-250 and 13A-12-270 apply only to convictions of sales of a controlled substance that do not apply to furnishing, giving[] away, delivering or distributing a controlled substance.

The review to the petitioner['s] drug cases by this Honorable Court will not show that the state court decision regarding these cases were so objectively unreasonable in light of the record and the evidence that no juror or trier of fact would have found the petitioner guilty beyond a reasonable doubt. For instance, there is not a single shred of evidence that the state has or ever had in their possession to support the proposition that this petitioner was involved in a controlled buy. In fact, the petitioner's []very own Southwest Airline[s] itinerary refute[s] the state's complaint. [T]herefore, the grand jury arbitrarily pulls December 29, 2009 out of thin air and return[s] an indictment against the petitioner, notwithstanding, the trial judge, clearly bound the incident over to the grand jury occurring on 12/23/2009. Hmmm[.]

Next, there is the question of this so-called $400.00 of prerecorded marked money that the police allegedly used on each alleged controlled

buy on 12/23/2009 and 1/5/2010, respectively. A total of $800.00 of John Q. Taxpayers['] money was never recovered, it simply vanished into thin air with no questions asked. More importantly, no documentation of the serial number[s] or photographs were taken. Nothing. What is even more nonsensical is the police had the gall to charge in the complaint that the petitioner furnished a controlled substance when the evidence[] clearly alleged a sale. A sale means simply what it says. Reader draw your own conclusion to the state's ludicrous facts.

To the extent of the Petitioner's ineffective assistance of counsel claim[s,] [t]he Petitioner implore[s] the Honorable Biven[s] not to do what the State of Alabama has done in each of these cases. That is, to see [] only what they want to see and then places blinders over their eyes to avoid seeing both a manifest injustice and a miscarriage of justice, and then attempt to hide JUSTICE behind rules, procedural bars, and case law. As ministers of justice, trained in the science of law, there is a moral and professional duty as an officer of the court to seek out justice regardless of where she (being justice) may attempt to hide herself. A rule, procedure, statute, or even a law should triumph over justice being done or rendered.

.    .    .

[I]n CC-10-2319 and CC-10-2320, unlawful distributions, contrary to the Respondent's assertion that[] the State adjudicated these cases on [their] merits (facts and evidence). The petitioner has already asserted that he is innocent in CC-10-2319 allegedly occurring on 12/23/2009. Petitioner has already refuted the State's complaint, indictment, and evidence, rather the lack thereof, with clear and convincing evidence that cannot be rebutted by the Respondent for the State of Alabama, except with words such as procedural defaults, time bars, deferential and even doubly deferential preference for the State. By the Respondent's own admission, if proved, actual innocence serves as a gateway through a procedural bar and expiration of the statute of limitations.

(*Id.* at 4-6 & 8 (internal citation omitted; footnote added)).[15]

## CONCLUSIONS OF LAW

---

[15]    The undersigned has included the foregoing excerpts from Petitioner's Reply in fairness to Miller, even though the quoted language "conflates" the actual innocence gateway exception in *McQuiggin v. Perkins, infra,* with the "merits" of his claims. (*See id.*).

    **A.**   **Statute of Limitations.**    The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") was enacted on April 24, 1996 and, pertinent to this case, added a new subdivision to 28 U.S.C. § 2244 providing for a one-year period of limitations within which state prisoners must file their habeas corpus petitions pursuant to 28 U.S.C. § 2254. *Wilcox v. Florida Dep't of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998).

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of—
>
>     (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
>     (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
>     (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>     (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

    Subsections (B), (C), and (D) of § 2244(d)(1) clearly do not apply to petitioner's case and, therefore, the timeliness of Miller's petition must be calculated under § 2244(d)(1)(A) based upon the date his second-degree theft of property and drug

distribution judgments became final.[16] "For prisoners whose convictions became final prior to the effective date of the AEDPA, the one-year statute of limitations instituted by the AEDPA began to run on its effective date, i.e., April 24, 1996." *Guenther v. Holt*, 173 F.3d 1328, 1331 (11th Cir. 1999) (citations omitted), *cert. denied*, 528 U.S. 1085, 120 S.Ct. 811, 145 L.Ed.2d 683 (2000). This rule from *Guenther* is obviously not applicable in this case because Miller's convictions and sentences initially became final in 2011 and, then, at least with respect to his second-degree theft of property case, his conviction and sentence became final in 2015. Given that the State admits that Miller's resentencing on the theft case on June 17, 2015 created a new judgment under *Cox, supra,* and because the trial court "tinkered" with Miller's drug distributions sentences on that same date (that is, June 17, 2015), the undersigned simply assumes, for the sake of argument, that the Mobile County Circuit Court's actions on June 17, 2015 created a new judgment permitting Petitioner to attack his remaining/underlying convictions. *See Cox, supra,* at 1116-1118.[17]

---

[16]  "'[T]here is only one judgment, and it is comprised of both the sentence and the conviction.'" *Cox v. Secretary Florida Dep't of Corrections,* 837 F.3d 1114, 1118 (11th Cir. 2016) (citation omitted), *cert. denied,* __ U.S. __, 137 S.Ct. 2092, 197 L.Ed.2d 897 (2017).

[17]  The undersigned takes this position because regardless of when this Court "starts" Miller's one-year limitations period on his drug distribution cases, his federal habeas corpus petition was untimely filed. In other words, given that Miller's petition is untimely even if this Court assumes the new judgment on June 17, 2015 allows him to attack all of his underlying convictions, his petition certainly would be untimely if this Court was to conclude that Miller's drug distribution convictions became final 42 days after he entered counseled guilty pleas to those two charges on February 16, 2011, that is, on March 30, 2011. This is because Miller's one-year limitations period ran unabated for a period of 320 days until he filed his first Rule 32 petition in the Circuit Court of Mobile County, Alabama on February 13, 2012 (Doc. 11, Exhibit 2, at 7). After that Rule 32 petition was dismissed on October 18, 2012 (Doc. 11, Exhibit 2, at 68-80) and Miller did not appeal that dismissal, the clock on his one-year limitations period began to run again on November 29, 2012, and expired less than two months later, that is, on or about January 13, 2013, some 3 years and 9 months before he filed his federal petition in this Court. Under either scenario, then, Petitioner's federal petition is time-barred.

Section 2244(d)(1)(A) specifically provides that the one-year limitations period will run from "the date on which the judgment became final by the conclusion of direct review or the expiration of time for seeking such review[.]" As reflected above, Miller did not appeal his resentencing(s) on June 17, 2015 and, therefore, his judgments indisputably became final on July 29, 2015, when the time expired for him to file an appeal, *see* Ala.R.App.P. 4(b)(1) ("In a criminal case a notice of appeal by the defendant shall be filed with the clerk of the trial court within 42 days (6 weeks) after pronouncement of the sentence, provided that the notice of appeal may be oral, as provided in Rule 3(a)(2)."); *cf. Ex parte Wright,* 860 So.2d 1253, 1254 (Ala. 2002) ("'[P]ostconviction proceedings filed pursuant to Rule 32 are civil proceedings.' . . . '[I]n all cases in which an appeal is permitted by law as of right to the supreme court or to a court of appeals, the notice of appeal required by Rule 3[, Ala.R.App.P.,] shall be filed with the clerk of the trial court within 42 days (6 weeks) of the date of the entry of the judgment or order appealed from . . . .' . . . 'In the context of postconviction relief, the 42-day appeal period runs from the date of the trial court's denial of the Rule 32 petition.'"). Thus, giving Petitioner the benefit of all doubt in this case, it is clear that his one-year limitations period began running (at the latest) on July 29, 2015 and expired on July 29, 2016, at least three (3) months before he filed the instant habeas corpus petition in this Court on October 28, 2016 (Doc. 1, at 19). And because Petitioner makes no  argument in favor of statutory tolling (and cannot make such argument), the only avenue by which this Court can consider the merits of petitioner's § 2254 petition is by finding that he is entitled to equitable tolling of AEDPA's one-year limitations period, or, otherwise, by finding that he has established his actual factual innocence of the

crimes—two counts of unlawful distribution of a controlled substance (and, perhaps, one count of second-degree theft of property)—for which he entered counseled guilty pleas on February 16, 2011.

In *Holland v. Florida*, 560 U.S. 631, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010), the Supreme Court specifically held, for the first time, that "§ 2244(d) is subject to equitable tolling in appropriate cases[,]" *id.* at 645, 130 S.Ct. at 2560, and reiterated "that a 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649, 130 S.Ct. at 2562. For its part, the Eleventh Circuit has long embraced the doctrine of equitable tolling with regard to the one-year limitations period at issue: "Equitable tolling is to be applied when '"extraordinary circumstances" have worked to prevent an otherwise diligent petitioner from timely filing his petition.' . . . Thus, the petitioner must show both extraordinary circumstances and due diligence in order to be entitled to equitable tolling." *Diaz v. Secretary for the Dep't of Corrections*, 362 F.3d 698, 700-701 (11th Cir. 2004) (citation omitted). "Section 2244 is a statute of limitations, not a jurisdictional bar. Therefore, it permits equitable tolling 'when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence.'" *Steed v. Head,* 219 F.3d 1298, 1300 (11th Cir. 2000) (citation omitted). Thus, the one-year limitations provision need not be equitably tolled unless there is evidence that "extraordinary circumstances" beyond petitioner's control made it impossible for him to file his petition on time. *See Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618-619 (3rd Cir. 1998) ("[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid

application [of a limitation period] unfair.' . . . Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.' . . . The petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.' . . . Mere excusable neglect is not sufficient."). The Supreme Court in *Holland* indicated that "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence[,]" *id*. at 653, 130 S.Ct. at 2565, and gave the following guidance with respect to "extraordinary circumstances":

> We have previously held that "a garden variety claim of excusable neglect," such as a simple "miscalculation" that leads a lawyer to miss a filing deadline, does not warrant equitable tolling. But the case before us does not involve, and we are not considering, a "garden variety claim" of attorney negligence. Rather, the facts of this case present far more serious instances of attorney misconduct. And, as we have said, although the circumstances of a case must be "extraordinary" before equitable tolling can be applied, we hold that such circumstances are not limited to those that satisfy the test that the Court of Appeals used in this case.
>
> The record facts that we have set forth in Part I of this opinion suggest that this case may well be an "extraordinary" instance in which petitioner's attorney's conduct constituted far more than "garden variety" or "excusable neglect." To be sure, Collins failed to file Holland's petition on time and appears to have been unaware of the date on which the limitations period expired–two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

*Id.* at 651-652, 130 S.Ct. at 2564. It is also clear that a federal court can consider the merits of an untimely § 2254 motion if the petitioner establishes that he is factually innocent of the crimes for which he was convicted. *See San Martin v. McNeil,* 633 F.3d 1257, 1268 (11th Cir.) ("The actual innocence exception is 'exceedingly narrow in scope,' and the petitioner must demonstrate that he is factually innocent rather than legally innocent."), *cert. denied sub nom. San Martin v. Tucker,* 565 U.S. 843, 132 S.Ct. 158, 181 L.Ed.2d 73 (2011).

In this case, Petitioner has not established that the instant habeas corpus petition was timely filed nor has he established that extraordinary circumstances and due diligence counsel equitable tolling of the limitations period. *Compare Spottsville v. Terry*, 476 F.3d 1241, 1245 (11th Cir. 2007) ("'The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner[.]'") *with Pugh v. Smith,* 465 F.3d 1295, 1300-01 (11th Cir. 2006) ("Pugh bore the burden of establishing that equitable tolling was warranted."). Indeed, Petitioner nowhere in his Reply to the answer of the Respondent argues that he is entitled to equitable tolling of the one-year limitations period. (*See* Doc. 12). Presumably, Petitioner is silent in this regard because he is "'deemed to know of the one-year statute of limitations[,]'" and "a lack of a legal education" is not an excuse for the failure to file a timely federal habeas corpus petition. *Moore v. Frazier,* 605 Fed.Appx. 863, 868 (11th Cir. Mar. 31, 2015),[18] *cert denied,* 136 S.Ct. 124, 193 L.Ed.2d 97 (2015); *compare id. with Kreutzer v. Bowersox,* 231 F.3d

---

[18]    "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

460, 463 (8th Cir. 2000) (recognizing that "[e]ven in the case of an unrepresented prisoner alleging a lack of legal knowledge or legal resources, equitable tolling has not been warranted."), *cert. denied sub nom. Kreutzer v. Al Luebbers,* 534 U.S. 863, 122 S.Ct. 145, 151 L.Ed.2d 97 (2001); *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir. 2000) (finding petitioner's *pro se* status and ignorance of the law are insufficient to support equitable tolling of the statute of limitations), *cert. denied,* 531 U.S. 1194, 121 S.Ct. 1195, 149 L.Ed.2d 110 (2001); *Felder v. Johnson,* 204 F.3d 168, 171-72 (5th Cir.) (ignorance of the law and *pro se* status do not constitute "rare and exceptional" circumstances justifying equitable tolling), *cert. denied,* 531 U.S. 1035, 121 S.Ct. 622, 148 L.Ed.2d 532 (2000); *Terry v. Hurley,* 2014 WL 1660708, *2 (M.D. Ala. Mar. 10, 2014) ("[I]t is well settled that an inmate's lack of legal knowledge, the denial of access to a law library, his failure to understand legal principles and/or the inability to recognize potential claims for relief at an earlier juncture do not constitute extraordinary circumstances sufficient to warrant equitable tolling of the limitation period."). Accordingly, given Petitioner's failure to argue otherwise, the undersigned concludes that nothing other than Miller's own lack of due diligence is responsible for the untimeliness of the filing of the instant petition and that this is not one of those rare cases in which principles of equitable tolling can save him from AEDPA's one-year limitations period.

Despite his failure to make any argument in favor of equitable tolling of the one-year limitations period, Petitioner does contend that he is entitled to have the untimeliness of his § 2254 petition excused based on his actual innocence. In *McQuiggin v. Perkins,* 569 U.S. 383, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013), the

Supreme Court specifically held that "actual [factual] innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." *Id.* at __, 133 S.Ct. at 1928. However, the Supreme Court also notably cautioned that "tenable actual-innocence gateway pleas are *rare*[.]" *Id.* (emphasis supplied). "'[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Id.*, quoting *Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995) (other citation omitted). Here, Miller makes no actual innocence argument because he has offered no new evidence establishing his actual (factual) innocence of second-degree theft of property[19] or the two counts of unlawful distribution

---

[19]     Indeed, Petitioner offers no argument in his reply or in his petition that he is actually, factually innocent of second-degree theft of property; instead, he simply "travels" on the legal argument that the indictment was void or fatally defective because it failed to identify the owner of the property (that is, drugs) stolen. (*Compare* Docs. 4 & 5 *with* Doc. 12.) And because Miller effectively makes a legal innocence claim that could have been interposed at the time he chose to plead guilty to the charge, not a factual innocence claim, *McQuiggin* does not offer him a gateway to bypass the one-year limitations period. Petitioner has offered no trustworthy eyewitness accounts, by affidavit, establishing that as he left work on January 14, 2010 from Fred's General Store in Citronelle, Alabama, where he was the pharmacist, he did not unlawfully exert control (that is, steal) 3 bottles of Codeine Syrup and three bottles of Lortab tablets from his employer. That is, he has offered no trustworthy new evidence contrary to that evidence proffered by the State and set forth above, evidence which he admitted during his guilty plea proceeding that the State could prove (*see* Doc. 11, Exhibit 1, at 7), or with respect to other evidence in the record that he confessed to stealing the drugs (*see* Doc. 11, Exhibit 2, at 78).

        Although the undersigned has chosen to address any suggestion by Miller that he is actually innocent of second-degree theft of property "head on," the undersigned would be remiss in failing to observe that Miller was no longer "in custody" for the theft of property charge at the time he filed his habeas corpus petition in this Court on October 28, 2016. "In *Maleng v. Cook,* 490 U.S. 488, 491-92, 109 S.Ct. 1923, 1925-26, 104 L.Ed.2d 540 (1989), the Supreme Court held that once a sentence has fully expired, the petitioner is not 'in custody' for purposes of attacking that conviction in a habeas petition." *Sweet v. McNeil,* 345 Fed.Appx. 480, 482 (11th Cir. Sept. 18, 2009). Here, on June 17, 2015, Miller was sentenced to "time served" with respect to his theft of property conviction and, indeed, Petitioner specifically avers in his federal habeas petition filed on this Court's form, which related back to October 28, 2016 when he filed (Continued)

of controlled substances for which he entered counseled guilty pleas on February 16,

2011. *See Schlup v. Delo,* 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808

(1995) (noting that, to be credible, a claim of actual innocence "requires petitioner to

support his allegations of constitutional error with new reliable evidence--whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence--that was not presented at trial."); *see also id.* at 327, 115 S.Ct. at 867 ("To

---

his initial petition, that the state court's just-referenced action simply "corrected a[n] already
dead theft sentence[.]" (Doc. 4, at 4). Clearly, Miller was no longer "in custody" for the theft of
property charge when he filed his federal petition in this Court on October 28, 2016, and,
therefore, this Court lacks jurisdiction to grant him any relief respecting that conviction. As noted
in *Sweet, supra*:

> *Garlotte*'s holding is applicable only to consecutive sentences, not to concurrent
> ones. The fact that an expired consecutive sentence, if vacated, would advance
> the defendant's release date was central to the holding that a prisoner could
> challenge the underlying conviction of an expired sentence in a habeas
> proceeding. [*Garlotte v. Fordice,* 515 U.S. 39, 47, 115 S.Ct. 1948, 1952, 132
> L.Ed.2d 36 (1995)]. By contrast, a successful habeas action resulting in a
> vacated concurrent sentence would have no effect on Sweet's release date from
> his other conviction and sentence.

*Id.* at 482. In this case, of course, Miller received concurrent sentences, making the holding in
*Sweet* applicable. And because Petitioner does not allege, and nothing in the record suggests,
that he is under any "present restraint" attributable to his theft of property conviction and
sentence, *see Maleng, supra,* 490 U.S. at 492, 109 S.Ct. at 1926 (recognizing that "once the
sentence imposed for a conviction has completely expired, the collateral consequences of that
conviction are not themselves sufficient to render an individual 'in custody' for the purposes of a
habeas attack upon it"), this Court lacks jurisdiction to consider Miller's challenges to that
conviction (and sentence), *compare* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice
thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas
corpus in behalf of a person in custody pursuant to the judgment of a State court only on the
ground that he is in custody in violation of the Constitution or laws or treaties of the United
States.") *with* 28 U.S.C. § 2241(c)(3) ("The writ of habeas corpus shall not extend to a prisoner
unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United
States[.]"). *Sweet, supra,* at 481 & 482 (affirming the judgment of the district court denying
habeas relief, the district court finding that "it lacked subject matter jurisdiction over Sweet's
claim of ineffective assistance of counsel, based on counsel's failure to object to a violation of
the Double Jeopardy Clause, because Sweet was not 'in custody' on the lesser, simple battery
conviction at the time he filed his § 2254 petition.").

establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). Instead, with respect to his drug distribution convictions, Petitioner simply contends that he was in Houston, Texas on December 23, 2009, the very day a Mobile County District Court complaint allegedly avers he was in Mobile County unlawfully distributing controlled substances and that his trial attorney should have brought this information to the trial court's attention instead of advising him to plead guilty on February 16, 2011, and otherwise "questions" the "vanishing" of the "prerecorded marked money" utilized by the confidential informant to purchase controlled substances from him. The central problem with Miller's arguments on his distribution convictions is that they are "founded" not on any "new reliable evidence" that was not available at the time Petitioner entered counseled guilty pleas to these charges but, instead, are founded on evidence/facts that he had available to him (and of which he was aware) at the time he chose to plead guilty. Therefore, Miller's present attempts to argue about the "facts" in existence at the time he entered his guilty pleas not only does not constitute "new evidence" but, importantly, cannot overcome his solemn admission in open court that the State of Alabama could prove that on December 29 2009, he sold three bottles of Codeine liquid, weighing 619 grams, to a confidential informant and an undercover police officer within a 3-mile radius of Forrest Hill Elementary School and that on January 5, 2010, he sold Lortab and Xanax pills to a confidential informant and an undercover officer within a 3-mile radius of that same elementary school.[20] It matters not  (that is, it is not

---

[20]     Besides, a letter Petitioner penned to Judge Wood on May 12, 2011, contains an implicit admission of guilt. (Doc. 11, Exhibit 2, at 67.)

relevant) that the proceedings in the Mobile County District Court may have referenced Petitioner selling drugs on December 23, 2009, a date he was not in Mobile County, inasmuch as Petitioner was not indicted in the Circuit Court of Mobile County, Alabama on any alleged illegal activity occurring on December 23, 2009; instead, based on testimony before the Mobile County Grand Jury, Petitioner was indicted on, and on February 16, 2011 pled guilty to, two drug distribution charges, including illegally distributing (that is, selling) a controlled substance on December 29, 2009, a date upon which Miller was decidedly in Mobile County, Alabama (*see* Doc. 12, Exhibit 3 (flight itinerary of Miller showing that he returned from Houston on December 27, 2009)). And because Miller presents no new reliable evidence, such as trustworthy eyewitness accounts placing him somewhere other than in Mobile County, Alabama on December 29, 2009 and January 5, 2010, this is not one of those rare cases providing a gateway to avoid application of the one-year limitations period.

In light of the foregoing, the undersigned finds it clear that petitioner cannot take advantage of the actual innocence gateway recognized in *McQuiggin,* and because he bears the sole responsibility for the untimely filing of the instant habeas corpus petition, his petition is due to be dismissed as time-barred.

**B.     Certificate of Appealability.**    Pursuant to Rule 11(a) of the Rules Governing § 2254 Cases, the undersigned recommends that a certificate of appealability in this case be denied. 28 U.S.C. foll. § 2254, Rule 11(a) ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a

circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue only where "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2243(c)(2). Where, as here, a habeas petition is being denied on procedural grounds without reaching the merits of the underlying constitutional claims, "a COA should issue [only] when the prisoner shows . . . that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000); *see Miller-El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003) ("Under the controlling standard, a petitioner must 'sho[w] that reasonable jurists could debate whether  (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."'"). Because equitable tolling is an extraordinary remedy which the Eleventh Circuit has rarely granted, *see Diaz, supra*, 362 F.3d at 701 ("[T]his court has rejected most claims for equitable tolling."), and Petitioner has not demonstrated that he is actually (factually) innocent of the crimes for which he entered counseled guilty pleas on February 17, 2011, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Miller should be allowed to proceed further, *Slack, supra*, 529 U.S. at 484, 120 S.Ct. at 1604 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").

Rule 11(a) further provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.  *Brightwell v. Patterson,* CA 11-0165-WS-C, Doc. 14 (Eleventh Circuit order denying petitioner's motions for a COA and to appeal IFP in a case in which this Court set out the foregoing procedure); *see also Castrejon v. United States,* 2011 WL 3241817, *20 (S.D. Ala. June 28, 2011) (providing for the same procedure), *report and recommendation adopted by* 2011 WL 3241580 (S.D. Ala. Jul. 29, 2011); *Griffin v. DeRosa,* 2010 WL 3943702, at *4 (N.D. Fla. Sept. 20, 2010) (providing for same procedure), *report and recommendation adopted sub nom. Griffin v. Butterworth,* 2010 WL 3943699 (N.D. Fla. Oct. 5, 2010).

## CONCLUSION

The Magistrate Judge again recommends that Bruce E. Miller's petition for writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254, be dismissed as time-barred under § 2244(d). Petitioner is not entitled to a certificate of appealability and, therefore, he is not entitled to appeal *in forma pauperis*.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. Ala. GenLR 72(c)(1) & (2). The parties should note that under Eleventh

Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 28th day of November, 2017.

s/P. BRADLEY MURRAY
**UNITED STATES MAGISTRATE JUDGE**